USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/12/2022_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DOLORES ENID GONZALEZ,                     :
                                           :
                        Plaintiff,         :          **OPINION &**
                                           :          **ORDER**
        -against-                          :
                                           :          21-CV-2685 (JLC)
KILOLO KIJAKAZI,[1]                        :
Acting Commissioner,                       :
Social Security Administration,            :
                                           :
                        Defendant.         :
-----------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Dolores Enid Gonzalez seeks judicial review of a final determination by Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits and supplemental security income under the Social Security Act. The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Gonzalez's motion is granted, the Commissioner's cross-motion is denied, and the case is remanded for further proceedings.

## I.   BACKGROUND

### A. Procedural History

Gonzalez filed an application for disability insurance benefits ("DIB") on January 21, 2019 and supplemental security income ("SSI") on February 11, 2019

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the defendant in this action.

with an Alleged Onset Date ("AOD") of October 22, 2018.  Administrative Record

("AR"), Dkt. No. 11, at 205, 212.[2]  The Social Security Administration ("SSA")

denied Gonzalez's claims on May 2, 2019.  *Id.* at 120.  Upon reconsideration by a

physician and disability examiner in the State Agency, Gonzalez's claims were

again denied on August 13, 2019.  *Id.* at 130.  Gonzalez subsequently requested a

hearing before an Administrative Law Judge ("ALJ") on August 26, 2019.  *Id.* at

144–45.  On February 24, 2020, Gonzalez, represented by counsel, appeared and

testified before ALJ Angela Banks at an administrative hearing.  *Id.* at 34–65.  In a

decision dated March 12, 2020, the ALJ found Gonzalez not disabled, and denied

her claims.  *Id.* at 14–29.  Gonzalez sought review of the ALJ's decision by the

Appeals Council, which denied her request on January 28, 2021.  *Id.* at 1–3.

Gonzalez timely commenced this action on March 29, 2021, seeking judicial

review of the Commissioner's decision pursuant to 42 U.S.C. §405(g).  *See*

Complaint, Dkt. No. 1.  The Commissioner answered Gonzalez's complaint by filing

the administrative record on July 23, 2021.  Dkt. No. 11.  On November 19, 2021,

Gonzalez moved for judgment on the pleadings and submitted a memorandum of

law in support of her motion.  Motion for Judgment on the Pleadings, Dkt. No. 14;

Memorandum of Law in Support of the Plaintiff's Motion for Judgment on the

Pleadings ("Pl. Mem."), Dkt. No. 15.  The Commissioner cross-moved for judgment

on the pleadings on March 8, 2022, and submitted a memorandum in support of her

---

[2] The page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

cross motion.  Notice of Cross-Motion for Judgment on the Pleadings, Dkt. No. 26; Memorandum of Law in Support of Commissioner's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Mem."), Dkt. No. 27.  On March 29, 2022, Gonzalez submitted reply papers. Reply Brief ("Pl. Rep."), Dkt. No. 29.

### B. Administrative Record

#### 1. Gonzalez's Background

Gonzalez was born on February 27, 1981.  AR at 205.  At the time of the hearing, she was 38 years old and lived in the Bronx with two of her three children. *Id.* at 40–42.  She earned a GED and an associate's degree in 2008.  *Id.* at 41.  At the time of the surgery giving rise to her application, Gonzalez worked full-time at Bronx Health Care Systems as an administrative assistant.  *Id.* at 42–43. Previously, she worked full-time for Harlem RBI Inc. as a tutor, part-time at Bronx Care Health System Sport Time Clubs as a camp counselor, and as a secretary at the Global Business School, Inc.  *Id.* at 44–48.

In October 2018, Gonzalez had back surgery at Mount Sinai Hospital for low back pain.  *Id.* at 49–50.  After her surgery, Gonzalez was on medical leave, experienced complications that required admission to the hospital "every other week," and eventually lost her job.  *Id.* at 55–56.

#### 2. Relevant Medical Evidence

Gonzalez and the Commissioner have each provided a summary of the medical evidence contained in the administrative record.  *See* Pl. Mem. at 2–7; Def.

Mem. at 4–10.  "The Court adopts these summaries, which do not materially conflict with each other, as accurate and complete for the purpose of considering the issues raised in this suit, except to the extent we discuss additional records below." *Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 210 (S.D.N.Y. 2017).  The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II(B) below.

### 3.  ALJ Hearing

On February 24, 2020, Gonzalez appeared in person before ALJ Banks at a hearing in the Bronx.  AR at 37.  Gonzalez was represented by attorney Shayan Farooqui.  *Id.*  Vocational Expert ("VE") Jay Steinbrenner was present by telephone. *Id.*  At the hearing, Farooqui explained that Gonzalez had back surgery in October 2018 that resulted in symptoms including "reduced range of motion, chronic pain, an antalgic gait, [and] right-sided radiculopathy of sciatic pain," which continue to persist.  *Id.* at 40.

Gonzalez began her testimony by stating that at the time of the hearing, she lived in the Bronx with two of her three children.  *Id.* at 41–42.  The ALJ then inquired about Gonzalez's educational and work history.  Gonzalez testified that in 2008 she obtained her GED and associate's degree, *id.* at 42, and the last job she had before her surgery was as a full-time administrative assistant at Bronx Health Care Systems.  *Id.* at 42–43.  Gonzalez relayed that at that job, she spent about 50 percent of her day sitting and 50 percent standing.  *Id.* at 43.  She stated that when sitting she was responsible for "putting data in the system" and "dealing" with

internal employees, bosses, supervisors, and subordinates.  *Id*.  Her responsibility when standing was to "take paperwork to other employe[e]s in the office[,] and make copies and file documents."  *Id*. at 44.  Prior to this position, Gonzalez testified, she worked for Harlem RBI Incorporated as a tutor, helping children with homework, team management, people skills, and anti-bullying.  *Id*. at 44.  Gonzalez also stated that she previously worked part-time for Bronx Care Health System Sport Time Clubs as a counselor, working with clients ranging from newborns to age 18, *id*. at 44, 46–47, as well as at Global Business School, Inc. as a secretary. *Id*. at 48.  Her work history ends in October 2018.  *Id*. at 49.

Next, Gonzalez testified about her impairments.  She stated that she was scheduled for back surgery at Mount Sinai in October of 2018 as she had been in "perpetual pain."  *Id*. at 49–50.  She testified that she had low back pain on her right side over the previous two years, and described the pain as "[w]orse than contractions" and which "radiates down [her] right leg."  *Id*. at 50.  Gonzalez testified that she suffers from muscle spasms, described as a "sharp pain where [she] can't move [her] hands and feet," which interfere with her ability to "do stuff" for herself or her family such as cook meals, visit her mother, or put on shoes without her daughter's help.  *Id*. at 50–52.  Gonzalez testified that she showers every day with the assistance of her daughter and handicap metal bars in her bathroom.  *Id*. at 52.

Farooqui then asked Gonzalez if she would be able to walk 15 feet while holding a gallon of milk.  *Id*. at 53.  She testified that she would have to stop while

walking because her hands hurt and they would "give out" due to the weight and distance. *Id.* Gonzalez testified that her problems with her hands are "associated" with her back pain because the pain radiates down both arms and that she has received treatment for them. *Id.*

Gonzalez then explained that she has gone through physical therapy, received injections, takes narcotic medications, and has had surgery. *Id.* at 54. Gonzalez noted that in the future, she will have another MRI and CAT scan for her neck, will see her surgeon to talk about the next surgery, and will undergo a nerve ablation in March (the month after the hearing). *Id.* at 54, 56. Gonzalez testified that she does not drive and that her brother picks her up and drops her off for appointments. *Id.* at 54–55. Gonzalez stated that although she attempts to help with laundry, her daughters assist because she is unable to bend down too much without being in "constant pain." *Id.* at 55. She also explained that her daughter does her hair as she is unable to keep her hands high enough to do it herself. *Id.*

Next, Gonzalez described the circumstances under which she lost her job, noting that she

> was on medical leave and after the surgery [she] was having complications so [she] kept getting admitted every other week to the hospital due to the bad pains that [she] was having and [her first surgeon] didn't know what was going on . . . And [her job] gave [her] more time off after [she] kept explaining [that she felt] bones rubbing, [her] legs are weak, [her] neck is hurting. So the longer he gave [her] off, it came to the point that [her] job had to let [her] go.

*Id.* at 55–56.

Gonzalez then testified that on a typical day, she gets up and brushes her teeth. *Id.* at 56. She tries to sweep a little bit but is unable to mop because it is too much rotation for her back. *Id.* at 56–57. She explained that on a "good day" she "could try to [prepare] some meals" but doing so cannot involve cutting because "putting pressure on [her] hands hurt[s]." *Id.* at 57. She testified that otherwise she just stays in the house. *Id.* She stated that she either has groceries delivered or must stop three times before she gets home from a supermarket that is "probably" less than a block away. *See id.* at 53, 57. If she goes grocery shopping, she uses a shopping cart for support and her daughters come with her, help place items in the shopping cart, and help put everything away at home. *Id.* She testified that by the time she gets home, her legs hurt "so bad that [she's] just sitting." *Id.* Gonzalez stated that she could sit for around 10–15 minutes before her legs fall asleep and she has to move, that she could stand for about 10 minutes, and that it takes her about 10 minutes to walk less than a block to the grocery store. *Id.* at 58. She explained that her apartment has an elevator. *Id.* Finally, Gonzalez testified that the medication she takes does not help with her pain, and that, on a scale of one to 10, her pain is at a 10 "all the time," and "never changes" whether "with [or] without surgery." *Id.* at 58–59.

The VE then testified and classified Gonzalez's prior work history as Administrative, Day Care Supervisor, Recreation Aide, and Secretary. *Id.* 60. Next, the ALJ posed two hypotheticals. *Id.* at 61–63. For the first hypothetical, the ALJ asked the VE to consider

> an individual with the same age, education, and past
> work as the claimant with the residual functional
> capacity to perform light work as it's defined in the
> regulations, with the following additional limitations:
> such an individual can occasionally balance, stoop, crouch,
> kneel, crawl, and climb ramps or stairs; never climb
> ladders, ropes, or scaffolds . . . such an individual can
> tolerate no more than occasional exposure to extreme
> temperatures, high humidity, or respiratory irritants.

*Id*. at 61.  The VE testified that all of Gonzalez's past work would be able to be

performed "with perhaps the exception of the Recreational Aide," and that the VE

would also "look at perhaps working" at jobs including Cashier II, Mail Room Clerk,

and Electronics Subassembler.  *Id*. at 61–62.

The ALJ then posed a second hypothetical, adding the limitation that the

individual from the first hypothetical would be off-task more than 20 percent of the

time in an eight-hour workday.  *Id*. at 62.  The VE testified that an individual with

this additional limitation would not be able to perform any of the claimant's past

work and that there would not be any unskilled work in significant numbers in the

national economy that such an individual could perform because such a limitation

would "degrade their productivity to unacceptable levels."  *Id*.

Finally, the ALJ questioned Gonzalez regarding a $162 payment she received

in 2019.  *Id*. at 63–64.  Gonzalez stated that she did not go into work after October

2018 and that she filed for unemployment.  *Id*. at 64.  She testified that she was

looking online for jobs because she was "trying [her] best to go back."  *Id*.

### 4.  The ALJ's Decision

The ALJ denied Gonzalez's application on March 12, 2020.  *Id*. at 29.  In

doing so, the ALJ concluded that Gonzalez was not disabled under sections 216(i),

223(d), and 1614(a)(3)(A) of the Social Security Act from October 22, 2018 through the date of the decision.  *Id.*

In her analysis, the ALJ followed the five-step test set forth in the SSA regulations.  After determining that Gonzalez meets the insured status requirements of the Social Security Act through December 31, 2023, the ALJ found at step one that Gonzalez "ha[d] not engaged in substantial gainful activity since October 22, 2018, the alleged onset date."  *Id.* at 19.  At step two, the ALJ found that Gonzalez had the severe impairment of "degenerative disc disease of the cervical spine and lumbar spine."  *Id.*

At step three, the ALJ found that Gonzalez "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  *Id.* at 22.

Prior to step four, the ALJ assessed Gonzalez's residual functional capacity ("RFC").  *Id.* at 23–27.  The ALJ determined that Gonzalez's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and the other evidence in the record . . . ."  *Id.* at 24.  The ALJ concluded that Gonzalez had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Gonzalez] can occasionally balance, stoop, crouch, kneel, and crawl. [Gonzalez] can occasionally climb ramps and stairs. [Gonzalez] cannot climb ladders, ropes, or scaffolds. [Gonzalez] can tolerate no more than occasional exposure to extreme temperatures, high humidity, or respiratory irritants.

*Id.* at 23.  In reaching this decision, the ALJ considered Gonzalez's testimony from the hearing as well as medical records from October 2018 through February 2020. *Id.* at 24–26.  The ALJ stated that Gonzalez's "treatment notes continu[e] to show normal or close to normal strength findings, normal or close to normal gait findings, an ability to tandem walk, an ability to toe walk and heel walk, and mostly normal sensation findings support the finding [Gonzalez] can perform work at the RFC." *Id.* at 24.  The ALJ also provided an analysis as to which opinions she found to be persuasive, which she found to be unpersuasive, and why.  *Id.* at 25–26.

At step four, the ALJ concluded that Gonzalez was "capable of performing past relevant work as an administrative assistant, day care supervisor, and secretary" because "this work does not require the performance of work-related activities precluded by [Gonzalez's] residual functional capacity."  *Id.* at 27. Additionally, the ALJ discussed that in addition to past relevant work, other jobs exist in significant numbers in the national economy that Gonzalez could also perform.  *Id.* at 28.  Accordingly, the ALJ determined that "a finding of 'not disabled' [was] therefore appropriate."  *Id.* at 29.

## II.   DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides."  42 U.S.C. § 405(g).  The district court must determine

whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); see also *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

## 2.  Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

12

other kind of substantial gainful work which exists in the national economy." 42

U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing a claimant's impairments and determining whether they meet

the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security

Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*,

722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)).

Specifically, the Commissioner's decision must consider factors such as: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3)

subjective evidence of pain or disability testified to by the claimant or others; and

(4) the claimant's educational background, age, and work experience." *Id*. (citations

omitted).

### a.    Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential

evaluation process' to determine whether a claimant is disabled[.]" *Estrella v.

Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. §

404.1520(a)(4).  First, the Commissioner must establish whether the claimant is

presently employed.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is

unemployed, the Commissioner goes to the second step and determines whether the

claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R.

§ 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner

moves to the third step and considers whether the medical severity of the

impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is considered disabled. *See id.*; 20 C.F.R. § 404.1520(d).

If the claimant alleges a mental impairment, "the regulations further require that the [Commissioner] 'rate the degree of [the claimant's] functional limitation based on the extent to which [her] impairment(s) interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Rosario v. Kijakazi*, No. 20-CV-5490 (JPC) (BCM), 2022 WL 875925, at *11 (S.D.N.Y. Mar. 15, 2022) (quoting 20 C.F.R. § 404.1520a(c)(2)), *adopted by* 2022 WL 976879 (Mar. 31, 2022). "The degree of functional limitation is rated in 'four broad functional areas,' including the claimant's ability to '[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.'" *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3)). The Commissioner uses a five-point scale to determine the degree of limitation in each area: None, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). "These ratings are used both at step two, to determine whether a mental impairment is 'severe,' and at step three, to determine whether a severe mental impairment meets or medically equals a listed impairment." *Rosario*, 2022 WL 875925, at *11.

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work. *See* 20 C.F.R. §

404.1520(a)(4)(iv).  Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether the claimant possesses the ability to perform any other work.  *See* 20 C.F.R. § 404.1520(a)(4)(v).

The claimant has the burden at the first four steps.  *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy.  *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b.   Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial."  *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000).  Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits."  *Sims*, 530 U.S. at 111. Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history.  *Pratts*, 94 F.3d at 37 (citing 20 C.F.R. §§ 404.1512(d)–(f)).  This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's

impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question. Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law." (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999))). The ALJ must develop the record even where the claimant has legal counsel. *See, e.g., Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Remand is appropriate where this duty is not discharged. *See, e.g., Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### c.    Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y.

Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted).  For SSI and Social Security Disability Insurance applications filed prior to March 27, 2017, SSA regulations set forth the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2); *see also, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).  Under the treating physician rule, an ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources.  *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000).  In addition, a consultative physician's opinion was generally entitled to "little weight."  *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the evaluation of medical opinion for claims filed on or after March 27, 2017 (such as Gonzalez's claim in this case).  *See* REVISIONS TO THE RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017).  "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources."  *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *19 (citing 82 Fed. Reg. 5844).  The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  *Id.* (quoting 20

C.F.R. §§ 404.1520c(a), 416.1520c(a)).  "Instead, an ALJ is to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'"  *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)–(b), 416 920c(a)–(b).  Under the new regulations, the ALJ must "explain how [she] considered" both the supportability and consistency factors, as they are "the most important factors."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ v. Comm'r of Soc. Sec.*, No. 20-CV-6389 (RWL), 2022 WL 278657, at *6 (S.D.N.Y. Jan. 31, 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors).  Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)."  *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) *adopted*, 2022 WL 717612 (Mar. 10, 2022).  With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes."  *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion). *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[W]hen the opinions offered by two or more medical sources about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, the ALJ [should] articulate how [s]he considered the remaining factors in evaluating the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal quotations removed).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting cases) ("the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar"). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at

*9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819910, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must explain in all cases how [he or she] considered" supportability and consistency); *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *adopted by* 2021 WL 134945 (Jan. 14, 2021) (remanding so  ALJ can "explicitly discuss both the supportability and consistency of the consulting examiners' opinions").  "An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler*, 546 F.3d at 265).  However, the Court need not remand the case if the ALJ only committed harmless error*, i.e.*, where the "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d.   Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court.  *See Osorio v. Barnhart*, No. 04-CV-7515 (DLC),

2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Id.* (quoting *Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Pena*, 2008 WL 5111317, at *10 (internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" *Id.* (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. *Id.* First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. *Id.* (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (citing 20 C.F.R. § 404.1529(a)).

Among the kinds of evidence that the ALJ must consider (in addition to objective

medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location,
> duration, frequency, and intensity of the individual's pain
> or other symptoms; 3. [f]actors that precipitate and
> aggravate the symptoms; 4. [t]he type, dosage,
> effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other
> symptoms; 5. [t]reatment, other than medication, the
> individual receives or has received for relief of pain or
> other symptoms; 6. [a]ny measures other than treatment
> the individual uses or has used to relieve pain or other
> symptoms (e.g., lying flat on his back, standing for 15 to
> 20 minutes every hour, or sleeping on a board); and 7.
> [a]ny other factors concerning the individual's functional
> limitations and restrictions due to pain or other
> symptoms.

*Pena*, 2008 WL 5111317, at *11 (citing SSR 96-7p, 1996 WL 374186, at *3 (SSA July

2, 1996)).

### B. Analysis

Gonzalez argues that this case should be remanded because the ALJ: (1)

failed to properly evaluate the opinions of treating neurosurgeon Dr. Konstantinos

Margetis, M.D., and (2) provided no analysis of Gonzalez's subjective complaints.

Pl. Mem. at 8, 15.  The Commissioner counters that substantial evidence supported

the ALJ's RFC and credibility findings, and that the ALJ properly weighed the

medical opinions.  Def. Mem. at 13, 18.  For the following reasons, the Court agrees

with Gonzalez.

#### 1. The ALJ Failed to Properly Assess Dr. Margetis' Opinions

The ALJ failed to properly consider Dr. Margetis' opinions in reaching her

RFC determination.  Under the new regulations, an ALJ must explicitly discuss the

supportability and consistency of an opinion in making her assessment, and the failure to do so constitutes legal error. *See, e.g., Acosta-Cuevas,* 2021 WL 363682, at *15–16; *Velasquez,* 2021 WL 4392986, at *25. Specifically, the ALJ must "explain her findings regarding the supportability and consistency for each of the medical opinions [by] pointing to specific evidence in the record supporting those findings." *Raymond M. v. Comm'r of Soc. Sec.*, No. 19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (citations and quotations omitted).

The record contains two physical assessments from treating neurosurgeon Dr. Margetis. *See* AR at 539, 1445. In the first, he provided a physical assessment of Gonzalez on September 24, 2019 in which he opined that Gonzalez: could walk 1–2 blocks without rest or significant pain; would need to take 10-minute-long unscheduled breaks to change position, walk, or sit every hour during an eight-hour workday; could "never" lift and carry any amount of weight in a competitive work situation; did not have limitations in reaching, handling, or fingering, and would be absent from work more than four times per month based on her level of pain severity. *Id.* at 539–40. Then on February 21, 2020, Dr. Margetis completed a physical impairment questionnaire in which he noted that he had seen Gonzalez every six to eight weeks since May 2019. *Id.* at 1445–46. In that questionnaire, he opined that: Gonzalez's symptoms of neck pain, hand numbness, low back pain, unsteady gait, "RLE pain," and numbness were "often" severe enough to interfere with work-related tasks; that she would not need to recline or lie down in excess of typical breaks during an eight-hour workday; that she can sit and stand/walk for 15

minutes at one time, sit for four hours in an eight-hour workday, and stand/walk for one hour in an eight-hour workday; Gonzalez would need approximately two to three 15-minute unscheduled breaks in an eight-hour workday; she could "occasionally" lift and carry less than 10 pounds in a competitive work situation but "never" any weight heavier than 10 pounds; and that she would likely be absent from work once or twice a month as a result of her impairments.  *Id.*

Here, the ALJ committed legal error because she failed to address the supportability of these two opinions at all.  Instead, she merely summarized Dr. Margetis' 2019 physical assessment and 2020 physical impairment questionnaire, and then summarily concluded that the opinions "are not found persuasive" based only on (1) findings made by consultative examiner Dr. Daniel Schwartz, M.D., and (2) treatment notes that "suggest the claimant has greater functional abilities than noted by Dr. Margetis and support the finding the claimant can perform work at the RFC."  *Id.* at 26.  However, "the ALJ . . . entirely omitt[ed] any discussion of [Dr. Margetis'] explanations and what he considered in arriving at his opinion[s]."  *Balotti v. Comm'r of Soc. Sec.*, No. 20-CV-8944 (RWL), 2022 WL 1963657, at *5 (S.D.N.Y. June 6, 2022) (ALJ committed error warranting remand when he "nowhere referred to any explanation" doctor gave to support his opinion) (collecting cases).

For example, the ALJ did not consider Dr. Margetis' opinions in light of prior treatment notes he had made based on examinations of Gonzalez on May 3, 2019 or June 7, 2019.  *See id.* at 421–23 (noting "persistent low back and RLE pain," "main

symptom is low back pain," "full strength," "hand numbness-neck pain," straightening and no instability in the cervical x-ray, no instability in the lumbar x-ray, observing images with notes of "right side recurrent disc herniation or scar" and "modic changes," and indicating that he "will monitor the cervical symptoms for now" with a referral for possible basivertebral nerve ablation), 428–29 (noting "persistent low back and RLE pain," "[f]ull strength," "[h]and numbness- neck pain," "likely candidate for L5-S1 TLIF").[3]  Nor did the ALJ address any explanation provided in the assessments themselves.  Specifically, Dr. Margetis explained in his assessments that: 1) he determined that Gonzalez would likely be absent from work more than four times a month "[b]ased on her level of pain severity," *id.* at 540; and 2) side effects of the medications she took may impact her capacity for work, including dizziness and fatigue, *id.* at 539, or drowsiness, *id.* at 1445.  The ALJ, in finding Dr. Margetis' opinions unpersuasive, failed to address these explanations.

The Commissioner argues that the ALJ "addressed these supporting diagnoses and symptoms when discussing Dr. Margetis' questionnaires," Def. Mem.

---

[3] "Basivertebral nerve (BVN) ablation is a minimally invasive spinal procedure targeting the BVN, which is responsible for carrying nociceptive information from damaged vertebral endplates, an entity recently postulated as a source of chronic axial low back pain (LBP)."  *Basivertebral Nerve Ablation,* NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/books/NBK572127 (last visited August 11, 2022).  Transforaminal Lumbar Interbody Fusion (TLIF) is a surgical procedure that "treats spinal instability or weakness by11 permanently uniting bones of the lumbar (lower) spine. The goals of a TLIF are to decompress (remove the pressure from) the spinal cord and/or nerves, re-stabilize the spine, and prevent further movement and degeneration at the joints in question."  Transforaminal Lumbar Interbody Fusion (TLIF), COLUMBIA NEUROSURGERY, https://www.neurosurgery.columbia.edu/patient-care/treatments/transforaminal-lumbar-interbody-fusion-tlif (last visited August 11, 2022).

at 20–21.  However, a review of the decision reveals that the ALJ only discussed a portion of the support the Commissioner identified.  *See* AR at 26.[4]  Moreover, the Commissioner argues that Dr. Margetis provided "little support and explanation," and therefore the ALJ's analysis "was necessarily brief."  Def. Mem. at 20–21.  Nevertheless, the ALJ's decision does not discuss the quantum of support or explanation for Dr. Margetis' opinions, nor does it assert that any lack of support influenced the ALJ.  Thus, it is unclear whether that factor was part of the ALJ's ultimate conclusion.  *See Acosta Cuevas*, 2021 WL 363682, at *15 (ALJs "must provide a reviewing Court with a sufficient explanation to ensure that they have complied with the legal procedures controlling their decision").  Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained [his] opinion(s)."  *Id.* at *10.  Here, the ALJ's decision contains no such inquiry as required.  Therefore, as in *Acosta Cuevas*, "the ALJ failed to apply or even consider the supportability factor."  *Id.* at *14.

Moreover, in her determination that Dr. Margetis' opinions were inconsistent with the record, the ALJ noted that they contrast with "the claimant's treatment notes showing normal or close to normal strength findings, mostly normal sensation

---

[4] With respect to addressing "supporting diagnoses and symptoms," the ALJ states only that Dr. Margetis: 1) "reported the claimant suffers from lumbar radiculopathy and cervical stenosis with dizziness and fatigue;" and 2) "opined [Gonzalez] . . . would miss work 1-2 times per month due to symptoms."  AR at 26.  The ALJ's discussion thus included two diagnoses and two symptoms.  However, contrary to the Commissioner's arguments, nowhere does the ALJ address "symptoms or side effects of . . . drowsiness, neck and low pain, hand numbness, unsteady gait, and leg pain and numbness," Def. Mem. at 20, or Dr. Margetis' opinion that Gonzalez's "pain severity" would be the cause of absence from work.  AR at 540.

findings, intact coordination, and normal or close to normal gait findings a few months after surgery support the finding the claimant can perform work at the RFC." AR at 26. However, she did not identify which treatment notes from the record or her earlier summary, if any, she considered in evaluating the consistency of Dr. Margetis' opinion. *See id.* at 24–26. Additionally, nowhere did the ALJ analyze any conflicting evidence in the record that appears to support Dr. Margetis' findings. For example, the record includes treatment notes that indicate Gonzalez's gait was "unsteady," "antalgic," or "mildly antalgic," *see, e.g., id.* at 606, 607, 609, 631, and that her pain "significantly affected her activities of daily living" such as "getting out of bed, walking, climbing [stairs], bathing, dressing, or sitting on a chair . . . shopping, cooking, doing house work, driving, or using public transportation[,] . . . get[ting] up from a sitting position, or prolonged standing." *Id.* at 613. While an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," courts "cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor." *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (cleaned up); *see also, e.g., Hilton v. Kijakazi,* No. 20-CV-9318 (RWL), 2022 WL 1451476, at *2 (S.D.N.Y. May 9, 2022) ("ALJ may not ignore or mischaracterize evidence of a person's alleged disability"). Here, the ALJ failed to provide "a sufficient explanation to ensure that [she] ha[s] complied with the legal procedures controlling [her] decision." *Acosta Cuevas*, 2021 WL 363682, at *15 (ALJ consistency analysis insufficient when ignoring certain evidence).

Given the foregoing, the ALJ did not properly assess Dr. Margetis' opinion, and remand is warranted. *See Balotti*, 2022 WL 1963657, at *5 ("ALJ's failure to properly consider and apply the requisite factors for evaluating medical source opinions is grounds for remand") (collecting cases).

### 2. The ALJ Failed to Properly Evaluate Gonzalez's Subjective Complaints

The ALJ also failed to properly consider Gonzalez's subjective complaints. Although the ALJ is "not required to accept the claimant's subjective complaints without question," she must still "take the claimant's reports of pain and other limitations into account." *Campbell v. Astrue,* 465 F. App'x 4, 7 (2d Cir. 2012) (cleaned up). Upon a determination that allegations of pain "are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). Such was required here, because the ALJ concluded that Gonzalez's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR at 23–24. This credibility inquiry requires consideration of the seven factors described *supra* in Section II(A)(2)(d):

> (1) The individual's daily activities;
> (2) The location, duration, frequency and intensity of pain or other symptoms;
> (3) Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

> (5) Treatment, other than medication, the individual
> receives or has received for relief of pain or other
> symptoms;
> (6) Any measures other than treatment the individual
> uses or has used to relieve pain or other symptoms (e.g.,
> lying flat on his or her back, standing for 15 to 20 minutes
> every hour, or sleeping on a board); and
> (7) Any other factors concerning the individual's
> functional limitations and restrictions due to pain or other
> symptoms.

*McClinton v. Colvin,* No. 13-CV-8904 (CM) (MHD), 2015 WL 5157029, at *32

(S.D.N.Y. Sept. 2, 2015) (ALJ finding that objective evidence alone did not

substantiate extent of plaintiff's assertions "triggered" need to evaluate credibility

"with specific reference to the seven factors"), *adopted by* 2015 WL 6117633 (Oct. 16,

2015).[5]  Here, the ALJ made two errors with respect to the required credibility

assessment.

First and most significantly, the ALJ "does not appear to have undertaken . .

. a credibility assessment" at all, as she makes no explicit reference to credibility.

*Id.*  Rather than specifying any weight given to Gonzalez's statements, the ALJ

instead explained only that Gonzalez's hearing testimony "cannot be found fully

consistent with the evidence" because it conflicted with 1) Dr. Schwartz's findings

and 2) treatment notes in the record, which she described as "normal or close to

---

[5] Although the Report and Recommendation ("R&R") in this case was adopted on
October 16, 2015, the Westlaw platform appears to have published the R&R again
instead of the order adopting it; nonetheless, as evident from the adoption order on
Lexis Nexis, the R&R was in fact adopted.  *See McClinton v. Colvin,* No. 13-CV-8904
(CM) (MHD), 2015 U.S. Dist. LEXIS 141217 (S.D.N.Y. Oct. 16, 2015).  *See also
McClinton v. Colvin,* No. 13-CV-8904 (CM) (MHD), Dkt. No. 24 (Memo
Endorsement).

normal" findings that purportedly support that Gonzalez has "greater functional

abilities than she alleges and support the finding [Gonzalez] can perform work at

the RFC." AR at 27.[6]  However, although the ALJ identified portions of Dr.

Schwartz's findings on which she relied, the ALJ did not provide specific citations in

this portion of the analysis to the other medical records showing "normal" findings

that she determined were contrary to Gonzalez's subjective statements.  Nor did the

ALJ specify the weight she gave to any of Gonzalez's identified statements.  The

failure to provide specific reasons for discounting Gonzalez's subjective claims is

legal error.  *See, e.g., Vellone on behalf of Vellone v. Saul*, No. 20-CV-261 (RA), 2021

WL 2801138, at *4 (S.D.N.Y. Jul. 6, 2021) (when ALJ discounts claimant's

testimony she "must provide specific reasons for the finding on credibility,

supported by the evidence in the case record, and [s]he must be sufficiently specific

---

[6]  Dr. Schwartz was a consultative examiner who examined Gonzalez on March 28, 2019.  He opined that Gonzalez "has moderate limitations for carrying and lifting and mild limitations in her ability to sit, stand, climb, push, or pull objects." *Id.* at 406.  During his examination, Dr. Schwartz found that Gonzalez "appeared to be in no acute distress," with her "[g]ait normal." *Id.* at 404.  He assessed that Gonzalez's "[c]ervical spine show[ed] full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally," although she "ha[d] some mild kyphosis in the upper thoracic and cervical region" with "no abnormality in the thoracic spine otherwise." *Id.* at 405.  Gonzalez had "decreased motion on her later flexion bilaterally and rotary movement bilaterally," as well as some limitations in her ability to laterally flex and rotate, but "full" range of motion of shoulders, elbows, forearms, wrists, hips, knees, and ankles," with no noted issues in her extremities or fine motor activity of hands. *Id.* at 405–06.  Dr. Schwartz described her activities of daily living to include that: she cooks twice a week; she cleans once a week; her daughters help her with laundry, shopping, and cooking; she showers twice a day and sits in a chair in the shower; she dresses herself; and she watches TV, listens to the radio, and reads. *Id.* at 404.

to make clear to the individual and to any subsequent reviewers the weight [s]he gave to the individual's statements and the reasons for that weight.") (cleaned up).

Second, in her discussion of Gonzalez's testimony, the ALJ only considered some, but not all, of the applicable factors. *See Finch v. Berryhill*, No. 17-CV-892 (OTW), 2019 WL 1434621, at *12 (S.D.N.Y. Apr. 1, 2019) (ALJ did "not engage in an evaluation as to the credibility of Plaintiff's complaints" when he "made no reference to the seven factors" that he "must consider"). Here, the ALJ summarized Gonzalez's testimony to be that: she suffers from severe back pain with muscle spasms, she requires help with many activities of daily living including putting on her shoes, on a good day she can try to prepare meals but often her hands hurt, she stays in her house most days, she goes grocery shopping with her daughters when her daughters carry the bags, her legs hurt greatly after grocery shopping, she can sit for about 10–15 minutes before needing to change positions, her legs fall asleep when she sits, she can stand for 10 minutes at a time, and it takes her about 10 minutes to walk one block. AR at 27. A review of this summary indicates that, while she did not explicitly refer to the credibility factors she considered, the facts she described related only to some of Gonzalez's pain symptoms, the impact of the symptoms on Gonzalez's ability to perform daily living activities, and activities that precipitate or aggravate the symptoms. *Id.* at 27.

However, the ALJ erred in her failure to consider any testimony related to the "type, dosage, [and] effectiveness" of medication or the "[t]reatment, other than medication, [Gonzalez] received for relief of pain or other symptoms" as required.

*McClinton*, 2015 WL 5157029, at *31.  For instance, the ALJ did not discuss
Gonzalez's hearing testimony that she had undergone physical therapy, received
injections, took narcotic medications, or had back surgery.  AR at 54.  Nor did the
ALJ consider Gonzalez's testimony that despite "everything, conservative and
invasive" she had done to treat the pain, Gonzalez was "still in pain" and planned to
do more tests for her neck and discuss a subsequent surgery with her surgeon.  *Id.*
Such testimony appears consistent with medical notes in the record.  *See, e.g., id.* at
294 (documenting medications Gonzalez was taking), 325–28 (physical therapy),
543–44 (operative report for surgery at Mount Sinai Hospital), 581 (nerve ablation
recommended, epidural lumber injections offered); 613 (pain "significantly affected
her activities of daily living" as Gonzalez had "difficulties with getting out of bed,
walking, climbing [stairs], bathing, dressing, or sitting on a chair . . . [her pain]
limits her from shopping, cooking, doing house work, driving, or using public
transportation[,] . . . [and she reported it was difficult to] get up from a sitting
position, or prolonged standing"); 621 (physical therapy prescribed in January 2019
but Gonzalez unable to continue due to pain; Gonzalez taking medication
Gabapentin from October 2018–April 2019 "does not help" with pain); *see also*
*McClinton*, 2015 WL 5157029, at *31 ("Plaintiff's allegations need not be
substantiated by medical evidence, but simply consistent with it") (cleaned up);
*Downey v. Barnhart*, 294 F. Supp. 2d 495, 502–03 (S.D.N.Y. 2003) (ALJ should not
discount subjective complaints of pain where objective evidence of pain and
attempted relief remedies exists in the record).

Thus, "[t]he ALJ does not provide any meaningful discussion" of some of the relevant factors "in connection with [a] credibility finding." *McGowan v. Astrue,* No. 07-Cv-2252 (DLI) (SMG), 2009 WL 792083, at \*11 (E.D.N.Y. Mar. 23, 2009) (ALJ erred in rejecting claimant's testimony about his symptoms). Because the ALJ failed to consider all the factors required "in determining the credibility of [Gonzalez's] symptoms and their limiting effects," remand is appropriate. *McClinton*, 2015 WL 5157029, at \*31 ("If the ALJ does not follow these steps, remand is appropriate").

### 3. The ALJ's Errors Were Not Harmless

The ALJ's failure to properly evaluate the medical evidence and Gonzalez's subjective complaints was not harmless. Had the ALJ given more credit to the opinion of Dr. Margetis in her RFC determination, the RFC might be more restrictive. For instance, Dr. Margetis opined in his most recent assessment that Gonzalez could only sit and stand/walk for 15 minutes at one time, sit for four hours in an eight-hour workday, and stand/walk for one hour in an eight-hour workday; Gonzalez could "occasionally" lift and carry less than 10 pounds in a competitive work situation and "never" lift and carry any weight heavier than 10 pounds. AR at 1443–46. Likewise, Gonzalez testified at her hearing that she could 1) sit, at most, for 10–15 minutes before her legs fall asleep and she has to move, and 2) only stand for 10 minutes, "probably less." *Id.* at 57–58.

Those limitations are not accounted for in the current RFC. Thus, the failure to properly assess Dr. Margetis' opinions and Gonzalez's hearing testimony were

"not harmless error" because "[h]ad the ALJ incorporated [these] . . . assessments in the RFC, the ALJ would have devised a different RFC determination." *Kevin R. v. Comm'r of Soc. Sec.,* No. 20-CV-6533 (FPG), 2021 WL 4025534, at *5 (W.D.N.Y. Sept. 3, 2021) (citing, *inter alia, Manuel v. Comm'r of Soc. Sec.*, No. 19-CV-23 (EAW), 2020 WL 2703442, at *4 (W.D.N.Y. May 26, 2020) (ALJ's failure to consider treating physician's opinion not harmless because restrictive limitations identified by physician could have resulted in finding of disability or more restrictive RFC finding if given proper consideration)); *see also Nichole L.Q. v. Kijakazi*, 5:20-CV-691 (BKS), 2022 WL 874398, at *10 (N.D.N.Y. Mar. 24, 2022) (errors that "implicate the ALJ's consideration of Plaintiff's subjective complaints . . . prohibit the Court from engaging in a meaningful review of the ALJ's RFC determination" and are "not harmless").

## III. CONCLUSION

For the foregoing reasons, Gonzalez's motion is granted, the Commissioner's cross-motion is denied, and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated: August 12, 2022
  New York, New York

_____
JAMES L. COTT
United States Magistrate Judge